**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIRAV PARIKH,<br><br>        Plaintiff,<br><br>        v.<br><br>RUDOLPH TECHNOLOGIES, INC.,<br>DAVID B. MILLER, JEFFREY A.<br>AUKERMAN, LEO BERLINGHIERI,<br>DANIEL H. BERRY, VITA CASSESE,<br>THOMAS G. GREIG, III, MICHAEL P.<br>PLISINSKI, and JOHN R. WHITTEN,<br><br>        Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF<br>THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nirav Parikh ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Rudolph Technologies, Inc. ("Rudolph" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Rudolph by Nanometrics Incorporated ("Parent") and PV Equipment Inc. ("Merger Sub"), a wholly owned subsidiary of Parent (Parent and Merger Sub are collectively referred to herein as "Nanometrics").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, Defendants maintain offices in this District, and/or Defendants conduct business in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of Rudolph common stock.

7.     Defendant Rudolph designs, develops, manufactures, and supports process control defect inspection and metrology, advanced packaging lithography, and process control software

systems used by microelectronic device manufacturers. Rudolph is incorporated in Delaware and maintains offices in Budd Lake, New Jersey that are used for "Corporate, Engineering and Service." Rudolph's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "RTEC."

8.      Defendant David B. Miller ("Miller") is the Company's Non-Executive Chairman of the Board.

9.      Defendant Jeffery A. Aukerman ("Aukerman") is a director of the Company.

10.     Defendant Leo Berlinghieri ("Berlinghieri") is a director of the Company.

11.     Defendant Daniel H. Berry ("Berry") is a director of the Company.

12.     Defendant Vita Cassese ("Cassese") is a director of the Company.

13.     Defendant Thomas G. Greig, III ("Greig") is a director of the Company.

14.     Defendant Michael P. Plisinski ("Plisinski") is the Chief Executive Officer and a director of the Company.

15.     Defendant John R. Whitten ("Whitten") is a director of the Company.

16.     Defendants Miller, Aukerman, Berlinghieri, Berry, Cassese, Greig, Plisinski, and Whitten are collectively referred to herein as the "Individual Defendants."

17.     Defendants Rudolph and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.  The Proposed Transaction**

18.     On June 24, 2019, Rudolph and Nanometrics issued a press release announcing that they had entered into a merger agreement whereby Rudolph stockholders would receive 0.8042 shares of Nanometrics common stock for each Rudolph share that they owned. According to the

press release, current Nanometrics stockholders would own 50% and current Rudolph stockholders would own 50% of the combined company. The press release states, in pertinent part:

**Nanometrics and Rudolph Announce Merger Agreement to Create a Premier Semiconductor Process Control Company**

*Complementary products and increased scale will benefit consolidated customer base*

*Combination increases served available market (SAM) opportunity to approximately $3B*

*Global Scale: accelerates R&D in complementary competencies while increasing worldwide customer presence to support leading customers – from wafer fabrication through final device packaging*

*Expected to generate at least $20M of annual cost synergies*

June 24, 2019 06:00 AM Eastern Daylight Time

MILPITAS, Calif. & WILMINGTON, Mass.--(BUSINESS WIRE)--Nanometrics Incorporated (NASDAQ: NANO), a leading provider of advanced process control metrology and software analytics, and Rudolph Technologies, Inc. (NYSE: RTEC), a leading provider of semiconductor process control systems, lithography equipment, and software for wafer fabs and advanced packaging facilities, today announced that they have agreed to combine in an all-stock merger of equals transaction. The merged company will be a premier end-to-end metrology, inspection, process control software, and lithography equipment provider for the semiconductor industry and other advanced markets.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Rudolph stockholders will receive 0.8042 shares of Nanometrics common stock for each Rudolph share. Upon completion of the merger, current Nanometrics stockholders will own approximately 50% and current Rudolph stockholders will own approximately 50% of the combined company.

Rudolph CEO Michael Plisinski will serve as Chief Executive Officer and Rudolph CFO Steven Roth will serve as Chief Financial Officer of the combined company, alongside a highly experienced leadership team comprised of executives from both companies. The Board of Directors will be led by Nanometrics director Christopher Seams and will have 12 directors, consisting of six from each existing Board.

\*       \*       \*

**Timing and Approvals**

The transaction is expected to close in the second half of 2019, subject to the completion of customary closing conditions, including receipt of regulatory approvals, and approval by the stockholders of each company.

19.     On August 15, 2019, in connection with the Proposed Transaction, Defendants authorized or caused the dissemination of a joint Registration Statement on Form S-4 with the SEC (the "Registration Statement").

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Registration Statement, which recommends that Rudolph shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Rudolph's and Nanometrics' financial projections; (ii) the financial analyses performed by Rudolph's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; and (iii) Rudolph's insiders' potential conflicts of interest.

21.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Rudolph Board of Directors; Rudolph's Reasons for the Merger; (iii) Nanometrics Unaudited Financial Projections; (iv) Summary of the Financial Projections by Nanometrics; (v) Rudolph Unaudited Financial Projections; (vi) Summary of the Financial Projections by Rudolph; and (vii) Opinion of Morgan Stanley, Rudolph's Financial Advisor.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied, Rudolph shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed

Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants'

misconduct.

> **1. Material Omissions Concerning Rudolph's and Nanometrics' Financial Projections**

23.     The Registration Statement omits material information concerning Rudolph's and

Nanometrics' financial projections.

24.     The Registration Statement states that "in connection with the discussions

regarding the proposed merger, Rudolph management prepared certain unaudited prospective

financial information for fiscal years 2019 through 2021 for its board of directors, Morgan Stanley,

Barclays and Nanometrics, to which Morgan Stanley then prepared, based on discussions with and

under the guidance of Rudolph management and which were reviewed and approved by Rudolph

management for Morgan Stanley's use in connection with its financial analysis and rendering its

opinion, extrapolations for fiscal years 2022 through 2028" (the "Rudolph Projections"). The

Registration Statement provides a table of the Rudolph Projections.

25.     The Registration Statement, however, fails to disclose the following concerning

Rudolph's Projections: (1) all line items used to calculate (a) Adjusted Gross Profit, (b) Adjusted

Operating Income, (c) Adjusted EBITDA, (d) Adjusted Net Income, and (e) Unlevered Free Cash

Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

26.     The Registration Statement states that "[i]n connection with the evaluation of the

merger, however, Nanometrics management prepared certain unaudited prospective financial

information for fiscal years 2019 through 2021 for its board of directors, Barclays, Morgan Stanley

and Rudolph" (the "Nanometrics Projections"). The Registration Statement provides a table of the

Nanometrics Projections.

27.     The Registration Statement, however, fails to disclose the following concerning

Nanometrics Projections: (1) all line items used to calculate (a) Non-GAAP Gross Profit, (b) Non-GAAP Operating Income, (c) EBITDA, (d) Non-GAAP Net Income, and (e) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28.     When a company discloses non-GAAP financial metrics in a Registration Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

29.     The disclosure of the aforementioned financial information is material because it would provide Rudolph shareholders with a basis to project the future financial performances of Rudolph and Nanometrics on a stand-alone and combined basis and would allow shareholders to understand the financial analyses performed by Morgan Stanley in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Rudolph and its financial

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 4, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

advisor, Rudolph shareholders are unable to assess the fairness of the Proposed Transaction and unable to determine how much weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30.     Accordingly, in order to cure the materially misleading nature of Rudolph's Projections and Nanometrics Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics, and disclose the line item projections. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Rudolph shareholders.

**2.   Material Omissions Concerning Morgan Stanley's Financial Analyses**

32.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by the Company's financial advisor, Morgan Stanley.

33.     With respect to Morgan Stanley's "*Public Trading Comparables Analysis*," Morgan Stanley selected fifteen "comparable" companies in calculating the ratio of aggregate value to EBITDA ("AV/EBITDA") and the price to earnings per share ratio for each of the fifteen companies. The Registration Statement, however, fails to disclose the multiples for each selected company, or a fair summary of the calculated multiples utilized.

34.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Rudolph Discounted Cash Flow Analysis*": (1) all line items used to calculate "the stand-alone unlevered free cash flows that Rudolph was forecasted to generate during the second half of CY 2019 and CYs 2020 through 2028"; (2) the terminal values of Rudolph at the end of

the forecast period; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.6% to 9.6%, and (ii) perpetual growth rates ranging from 1.0% to 3.0%; and (4) Rudolph's estimated net cash as of June 30, 2019.

35.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Nanometrics Discounted Cash Flow Analysis*": (1) all line items used to calculate "the stand-alone unlevered free cash flows that Nanometrics was forecasted to generate during the second half of CY 2019 and CYs 2020 through 2028"; (2) the terminal values of Nanometrics at the end of the forecast period; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.1% to 10.1%, and (ii) perpetual growth rates ranging from 2.0% to 4.0%; and (4) Nanometrics' estimated net cash as of June 30, 2019.

36.     With respect to Morgan Stanley's "*Exchange Ratio Implied by Discounted Cash Flow Analysis*," the Registration Statement fails to disclose Rudolph's and Nanometrics' fully diluted shares outstanding including equity awards as of June 20, 2019.

37.     The Registration Statement fails to disclose the following concerning Morgan Stanley's "*Relative Research Analysts' Future Price Targets*": (1) the price targets for Rudolph and Nanometrics observed by Morgan Stanley in its analysis; and (2) the sources of those price targets.

38.     The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to Rudolph shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Rudolph shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on it in

determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Rudolph shareholders.

**3.  Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

39.     The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

40.     The Registration Statement states that, upon consummation of the Proposed Transaction, Defendant "Michael P. Plisinki, chief executive officer [and a director] of Rudolph . . . will be the chief executive officer of the combined company[,]" and that Defendants Aukerman, Berlinghieri, Cassese, Miller, Plisinski, and Whitten will become directors of the combined company.

41.     The Registration Statement, however, fails to disclose the details of all employment-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated. Specifically, the Registration Statement fails to disclose pertinent information concerning Defendant Plisinski being considered to become the chief executive officer of the combined company, and information concerning Defendants Aukerman, Berlinghieri, Cassese, Miller, Plisinski, and Whitten being considered to be appointed to the board of the combined company.

42.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Rudolph shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

52.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Registration

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had

unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

59.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the

material information identified above to Company shareholders;

      B.      In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

      C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act,

and Rule 14a-9 promulgated thereunder;

      D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

      E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 4, 2019                    Respectfully submitted,

                                      **HALPER SADEH LLP**

                                      /s/Zachary Halper
                                      Zachary Halper, Esq.
                                        36 Kingston Run
                                        North Brunswick, NJ 08902
                                        Telephone: (212) 763-0060
                                        Facsimile: (646) 776-2600
                                        Email: zhalper@halpersadeh.com

                                        Daniel Sadeh, Esq. (*pro hac vice* application
                                        forthcoming)
                                        375 Park Avenue, Suite 2607
                                        New York, NY 10152
                                        Telephone: (212) 763-0060
                                        Facsimile: (646) 776-2600
                                        Email: sadeh@halpersadeh.com

                                        *Counsel for Plaintiff*

14
